[Crim. No. 358.    First Appellate District.—November 29, 1911.]

## THE PEOPLE, Respondent, v. HARRY DAVENPORT, Appellant.

CRIMINAL LAW—GRAND LARCENY—CONCERT TO STEAL DIAMOND STUD FROM PASSENGER BOARDING CAR—SUPPORT OF VERDICT.—Upon a prosecution for grand larceny in stealing a diamond shirt stud of the value of $500 from the person of the prosecuting witness, evidence that the defendant, acting in concert with two other persons, participated in jostling the prosecuting witness while entering a street-car, for the sole purpose of enabling one of their number to steal the shirt stud, and that this purpose was in fact accomplished, is sufficient to sustain a verdict of guilty of the offense charged, whether defendant personally removed the stud or not.

ID.—MODIFICATION OF REQUESTED INSTRUCTION AS TO ADHERENCE OF JURORS TO "REASONABLE DOUBT"—ABSENCE OF ERROR.—A requested instruction as to the duty of jurors who, after deliberating on all the evidence, should be of the opinion that defendant has not been proved guilty beyond a reasonable doubt, to adhere thereto "until convinced beyond all reasonable doubt that they were wrong," it is held was not erroneously modified by adding: "But it is the duty of every juror to reason with his fellow-jurors, to the end that he may join in a lawful verdict, and to discard any opinion he may have formed when convinced that it is not justified by the evidence," where what follows in the requested instruction, as well as what is given in the charge of the court, leaves no question as to the correct law, in case of a "reasonable doubt" of the defendant's guilt.

ID.—REQUESTED INSTRUCTIONS EMBODIED IN CHARGE.—It was not prejudicial error to refuse requested instructions which are fully and fairly embodied in the charge of the court.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—REMARK IN ARGUMENT NOT JUSTIFIED BY EVIDENCE — PROMPT WITHDRAWAL — INSTRUCTION.—

Misconduct of the district attorney in making a remark in his argument not justified by the evidence was not prejudicial, when it was promptly withdrawn upon discovery of his error and the court admonished the jury to disregard the same.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Harry L. Price, for Appellant.

U. S. Webb, Attorney General, and J. H. Riordan, for Respondent.

HALL, J.—Defendant was charged with the crime of grand larceny, for stealing from the person of one B. H. Baumeister, on the twelfth day of March of this year, one diamond stud of the value of $500. He was found guilty as charged, and upon judgment being rendered against him, he took an appeal to this court from the judgment and order denying his motion for a new trial.

The first contention made by appellant is that the evidence is insufficient to support the verdict.

The prosecution introduced at the trial the testimony of two witnesses, Dr. B. H. Baumeister and Dr. G. N. Torello, who are physicians. The testimony of these witnesses, as set forth in the transcript, shows the following state of facts:

On the twelfth day of March of this year Dr. B. H. Baumeister and Dr. G. N. Torello visited a patient at a house on the Mission road. Just before leaving the house Dr. Baumeister stood in front of a mirror to brush his clothes, and then observed that a large diamond stud that he was then wearing was in its place in his shirt front. It was fastened to the shirt by a screw inserted in a round hole or eyelet, worked in the shirt front for that purpose. The shirt was new, having been worn but three or four times. The witnesses left the house and walked about three blocks to Mission and Geneva streets for the purpose of taking an inbound Mission street car. This was at about 5 o'clock P. M. When they arrived at Mission and Geneva streets, which was a transfer

point, the car was not there, and they were obliged to wait a few minutes until it arrived. While waiting they stood conversing, and at this point Dr. Torello saw and particularly observed the diamond stud in its proper place in the shirt front of Dr. Baumeister. The car having arrived, Dr. Baumeister started toward the front end of the car for the purpose of boarding it at that end, but was called to the rear by Dr. Torello, and turned back to the rear end, as likewise did three men who had been advancing with Dr. Baumeister toward the front end. (The car was of the type having an inclosed center for passengers, and an open space at each end, also fitted with seats for passengers.) As Dr. Baumeister approached the rear entrance to the car he was followed by the three men just mentioned. As he reached the platform one of these men mounted to the first step, grasped with his hands the two stanchions, and crowded against Dr. Baumeister from the rear, while the other two men crowded against the doctor from either side and a little in front of him. These men jostled and pushed against him, and one at least jammed an elbow into the doctor's chest, with sufficient force to hurt. He was then hemmed in so that he could neither advance nor retreat for a period of time, estimated by the witness as the time that it would take to count five, counting slowly, when he was released, and passed into the car, as did also one of the said men, identified by the witness (Dr. Baumeister) as the defendant. These men (the two at his sides?) removed their hats, but at what particular point of time is not made clear by the testimony. The car had proceeded but about half a block from the point where the witness had boarded it when the defendant, who in the meantime had passed out of the inclosed portion, pulled the bell-cord, and as the car slowed up, but before it had stopped, the three men mentioned got off the car and ran toward the point where they had got on. Dr. Baumeister thereupon immediately felt for his diamond stud and found that it was gone. His shirt front bore finger prints, and the hole in which the stud had been fastened was elongated as from pulling on it. The car was not crowded, although all the seats were occupied, and Dr. Baumeister came into close contact, from the time he left the sidewalk until he found his stud gone, only

with the three men mentioned as having hemmed him in on the platform of the car.

Defendant was not apprehended until three and a half months after the occurrence in question, but Dr. Baumeister was positive in his identification of him as one of the three men—as the one who pressed against and jostled the witness from the right. In this connection the witness testified that the man who jostled him from the right had a pimply face, which caused the witness as a medical man to especially notice him. The record does not disclose whether or not the defendant at the time of his trial had such characteristic or not, but the purpose and pertinency of some questions asked the witness by defendant's counsel upon cross-examination are most readily explainable on the theory that he had.

The only witness for the defense was the defendant, and he was asked but one question, and in reply to that testified that he was not on a Mission street car on either the 11th, 12th or 13th of March of the present year.

We do not think that it can be doubted but that the evidence of which we have just given a résumé amply justifies the verdict of the jury. In our opinion it strongly supports the conclusion that the three men were acting in concert throughout the transaction, that they jostled and hemmed in the prosecuting witness for the purpose of enabling one of their number to steal the stud, and that such purpose was accomplished.

In addition to the probative effect of the circumstances affirmatively testified to by the witnesses for the people, the defendant as a witness denied that he was present when the offense was committed. The jury by their verdict have stamped this testimony as false. His false statement that he was not present but adds probative force to the incriminating circumstances in evidence against him.

The fact that Dr. Baumeister could not swear that defendant took the stud is of little consequence. The evidence most cogently tends to prove that one of the three stole the stud, and that all three were acting in concert to accomplish the larceny of the article. The witness did in fact testify upon cross-examination that one of the two who hemmed him in from the sides and front took the stud. This of course was

but his opinion, and was a fact to be determined by the jury. They have determined the fact, as we think, very justly against the defendant.

If any authority be needed to fortify our conviction as to the sufficiency of the evidence in this case to support the verdict of guilty, it may be found in *People* v. *Appleton,* 120 Cal. 250, [52 Pac. 582], where a verdict of larceny was sustained upon evidence, as we think, less convincing, and certainly not stronger, than in the case at bar.

Similar cases may be found. in *Commonwealth* v. *Cronan,* 155 Mass. 393, [29 N. E. 639], *Burns* v. *State* (Tex. Cr.), 71 S. W. 965, and *People* v. *Williams,* 242 Ill. 197, [89 N. E. 1030, 17 Ann. Cas. 313].

*People* v. *Williams* was cited by appellant, and we think is a most unfortunate citation for him, for while a conviction was reversed as to Williams upon evidence vastly weaker than such as is presented in the case at bar, the conviction was sustained against Jackson, the codefendant of Williams, on evidence no stronger, and in its essential features similar to the evidence against appellant in the case at bar.

Appellant complains of the action of the court in modifying an instruction requested by him. The instruction as given is as follows, the portion added by the court being inclosed in brackets: "If any one, or any number, of you, after deliberating on all the evidence, should be of the opinion that defendant has not been proven to be guilty by the evidence in this case, to a moral certainty and beyond every reasonable doubt, those entertaining that opinion should vote in favor of a verdict of not guilty, and should so adhere to their opinion until convinced beyond all reasonable doubt that they are wrong. [But it is the duty of every juror to reason with his fellow-jurors, to the end that he may join in a lawful verdict, and to discard any opinion he may have formed when convinced that such opinion is not justified by the evidence in the case.] You are instructed that mere probabilities are not sufficient to warrant a conviction, nor is it sufficient that the greater weight or preponderance of the evidence supports the allegations of the information, nor is it sufficient that upon the doctrine of chances it is more probable that the de-

fendant is guilty than that he is innocent to warrant a conviction.''

The modification was doubtless intended to admonish the jury against the fault of adhering, out of pride of opinion or the like, to an opinion once formed, though subsequently convinced of the erroneousness of such opinion. Its purpose was manifestly to direct the jurors' attention to their duty to reason fairly and honestly with one another upon the evidence; and while it probably was quite unnecessary to so admonish them, it could not, when read in connection with what precedes and follows it, give the jurors the idea, as claimed by appellant, that any juror should vote for conviction unless satisfied of the guilt of the defendant beyond all reasonable doubt. Not only in this instruction but in others the jury was repeatedly and pointedly charged that the defendant should not be convicted unless the jurors were convinced beyond all reasonable doubt and to a moral certainty of his guilt. The court did not err in modifying the instruction.

Appellant also complains of the refusal of the court to give the following instruction: ''If, after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendant, it is the duty of such juror so entertaining such doubt to vote for a verdict of not guilty. In such case he should not be influenced to vote guilty, for the reason that a majority of the jury should happen to be in favor of a verdict of guilty.'' But the principle of law involved in the first part of this proposed instruction was repeatedly stated to the jury in the charge of the court, and the latter part was substantially and sufficiently covered by the instruction first discussed herein.

Again, the court, at the request of the defendant, instructed the jury, ''That the people must establish every fact, necessary to prove the defendant guilty of the crime charged, to a moral certainty and beyond a reasonable doubt, and that you, and *each of you,* must be satisfied of his guilt under these tests before you can under the law convict him.'' (The italics are ours.)

From the whole charge we are satisfied that no juror could have possibly supposed that he should either vote for, or be

influenced to vote for, a verdict of guilty because a majority of the jurors were in favor of such a verdict.

Appellant in a somewhat general way complains of the refusal of the court to give several other instructions asked by defendant. It is sufficient to say that some were clearly erroneous, and for that reason were properly refused; and the others were fully covered by instructions that were given.

The only remaining point to be considered is the contention made that the district attorney was guilty of misconduct in his argument to the jury requiring a reversal of the judgment. Upon this point the record before us is as follows:

"During the argument to the jury by Mr. Berry, assistant district attorney, the following proceedings occurred:

"Mr. Price: We take an exception to the statement of the district attorney.

"The Court: What was the statement?

"Mr. Price: That the defendant was a member of the rogues' gallery.

"Mr. Berry: I said that the doctor identified the picture of the defendant in the rogues' gallery.

"Mr. Price: There is no such evidence in this case, and the district attorney knows that very well, and he knows that it is the grossest error possible to state such a thing when it is not in the evidence.

"Mr. Berry: My best recollection is this, that in the cross-examination—and if I am mistaken I stand subject to correction—

"The Court: I have no recollection of the doctor making such a statement. The jury will disregard the statement of the district attorney in that particular.

"Mr. Berry: Yes. I have no desire to prejudice the defendant's rights. It is sufficient to say that the circumstances of the identification were quite complete."

It is fair to assume from the foregoing statement that the district attorney was in good faith attempting to state what he believed the evidence to be, and was not, as in many of the cases reported in the books, baldly stating an injurious matter as of his own knowledge. The district attorney was mistaken as to what the evidence showed, and the court, besides throwing against him the weight of its recollection, promptly di-

rected the jury to disregard the statement of the district attorney. In this the district attorney at once acquiesced, and in effect withdrew the remark. The court again, in its instructions, admonished the jury to carefully distinguish between facts testified to by witnesses, and statements made by counsel, or contained in their arguments, as to what facts had been proved, and if there was a variance to consider only the facts testified to by the witnesses.

Under these circumstances we do not think the matter of such importance as to require a reversal of the judgment.

In *People* v. *Bradbury,* 151 Cal. 675, [91 Pac. 497], where defendant was on trial upon a charge of assault to commit rape, after showing that an employee of the defendant had told the witness upon the stand that he had knocked defendant down, and after having obtained an answer to the effect that the employee did not tell the witness the reason why he had knocked the defendant down, the district attorney asked the question, "Did he say he knocked him down for insulting his wife?" This referred to a matter in no way connected with the charge for which Bradbury was being tried. As the witness had just stated that the hired man did not say why he had knocked the defendant down, there is much better reason to believe that the district attorney was prompted to ask the last question solely for the purpose of getting before the jury by *innuendo* a damaging matter as against the defendant—especially damaging in view of the charges against Bradbury then being tried, than there is to believe that in the case at bar the district attorney sought to prejudice the rights of the defendant. And certain it is that the action of the court to safeguard the rights of the defendant was prompt, and readily acquiesced in by the district attorney.

The case of *People* v. *Bradbury,* 151 Cal. 675, [91 Pac. 497], amply supports the conclusion that the judgment in the case at bar should not be reversed for the action of the district attorney above discussed, and we so hold.

We find nothing in the record to support the claim of defendant that the district attorney frequently or at all referred to the defendant as a thief.

The judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.