[Crim. No. 7452. First Dist., Div. One. July 29, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH FRANKLIN RODRIGUEZ, Defendant and Appellant.

## COUNSEL

John P. Herlihy, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Louise H. Renne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from a judgment entered and sentence imposed following a jury verdict finding him guilty of petty theft. The information also alleged four prior convictions of petty theft, which defendant admitted prior to trial. By reason of said prior convictions and the sentence imposed in the instant case, defendant stands convicted of a felony. (Pen. Code, § 666.) None of the contentions made by defendant have merit and we accordingly affirm the judgment and sentence.

### The Facts

Walter Hoch, owner of Ralph's Appliance Shop in Hayward, testified as follows: That at approximately 6:30 p.m. on September 13, 1967, a customer entered his store. Shortly thereafter a second man entered the store. The latter picked up a crated portable television set and went out of the store. Hoch pursued him for some distance to a "green '58 to '60 Chevy or Oldsmobile" where the man threw the set into the open trunk of the car and then jumped into the car on the passenger side. The car then sped away. Hoch returned to the store and called the Hayward police, who arrived shortly thereafter. Hoch described the person and the getaway vehicle to the police. Hoch also informed the police that he was able to observe the last three digits of the car's license, to wit: 317.

Hoch testified further that shortly after reporting the incident to the police a police car drove up to his premises with defendant sitting in the back seat of the vehicle. He immediately recognized defendant as the person who had taken the television set. At the trial Hoch made an in-court identification of defendant as the person who had taken the television set.

Elwood Christensen, a Hayward police officer, testified that he was called to investigate the subject theft and pursuant thereto located the vehicle described by Hoch a few blocks' distance from the store at about 6:50 p.m. on the date of the theft. The car found was green and had the license number KZS 317.

Peter Quevedo, a Hayward police detective, also called to investigate the subject theft, testified to having seen defendant walking hurriedly away from the parked vehicle, at approximately 6:45 p.m. on the date of the theft. On the basis of probable cause arising from his radio description of defendant and the vehicle, Quevedo stopped defendant in order to question him regarding the reported theft. Quevedo stated that upon being stopped defendant appeared "nervous and excited." Defendant was thereupon placed in the patrol vehicle and returned to the store, where Hoch made the identification discussed above.

At the trial the following evidence was adduced of prior thefts involving defendant: Camille Rodriguez, owner of the Star TV in Hayward, testified that defendant had been in his store on September 13, 1966 for some 40 minutes purportedly shopping for a stereo. Defendant then left. A few minutes subsequent a deputy sheriff entered and asked Rodriguez if he had sold defendant a television set. Rodriguez responded that he had not. Deputy Sheriff Chavarria testified that he observed defendant leave Star TV with the item, hurry down the sidewalk, television set in hand, enter a vehicle and drive off. Both witnesses made in-court identifications of defendant as the individual they had seen leave Star TV with the television set.

In testimony as to a second prior, Mr. Robert E. Lee, owner of Robert E. Lee Stereo and TV in Hayward, stated that defendant had come into his store on September 23, 1966, and discussed the purchase of a stereo. While Lee was elsewhere detained, defendant left. Again, a third person came in and asked Lee if he had sold defendant a stereo. Such third person had seen defendant hurrying down the street with one. Lee had not so sold a stereo and determined one to be missing. With respect to this incident Wendell Earl testified that he had observed defendant browse about the stereos, take one and hurry off down the street. He identified defendant in court as the man who took the stereo. Earl's testimony was corroborated by Gerald Baker, a Hayward deputy sheriff, who testified to also having seen defendant on the day and time of the incident hurrying down the street, stereo in arm. Baker also made an in-court identification of defendant.

In defense to all the above, defendant, testifying in his own behalf, stated that on the day of the alleged theft from Hoch's store and at the time thereof, he and a friend had been at defendant's brother's house helping the latter fix a car. Defendant stated that they had walked part of the way, having run out of gas shortly before arriving there. Defendant testified that he had stayed at his brother's for approximately 45 minutes and then returned to his car, whereupon he was met by the police. Defendant at all times adamantly denied having taken the television set from Hoch. Defend-

ant's brother, Clarence "Ted" Rodriguez, corroborated defendant's testimony, stating that defendant and a friend had been at his house helping him to fix a car and remained there for approximately 45 minutes.

On being cross-examined concerning the prior offenses defendant initially denied having taken the television from Rodriguez's store and the stereo from Lee's store. On continued questioning he admitted having taken these two items.

### The Identification

Defendant contends that Hoch's identification in front of his store on the day of the alleged theft and his in-court identification were constitutionally infirm because the identification was equivocal and ambivalent; because the police unfairly suggested defendant's identity to Hoch; because the judge acted as the People's advocate in questioning Hoch as to how he identified defendant; because no counsel was present nor were any admonitions given prior to Hoch's identification; and, finally, because the in-court use of photographs was prejudicially suggestive.

In considering these contentions we observe that objections were interposed to the identification process on the basis that it violated defendant's rights under the Third, Fourth, Fifth, Sixth and Fourteenth Amendments and the principles enunciated in *United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California*, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. These two cases hold, essentially, that the right to counsel attaches when a defendant is required to appear in a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses. We also observe that the trial court conducted a *voir dire* hearing out of the presence of the jury in order to pass upon the fairness of the pretrial identification and the admissibility of the anticipated in-court identification. Finally, we note, preliminarily, that the thrust of defendant's contentions with respect to the identification made by Hoch in front of his store following defendant's apprehension is that it was impermissibly suggestive, that it was unfair, and that it was conducted without notifying him of his right to have counsel present or that counsel would be appointed if necessary.

Initially we must make a further observation in order to place defendant's contentions into proper focus. It has to do with the application of the *Wade-Gilbert* doctrine. That doctrine is applicable to a claim that the defendant was entitled to counsel at the pretrial identification. Where the claim is made that the pretrial confrontation was so unnecessarily suggestive and unfair as to be conducive to irreparably mistaken identification, then the recognized ground of attack is that the defendant was denied due

process of law independent of any right-to-counsel claim. (*Stovall* v. *Denno,* 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967].)

### A. *The Wade-Gilbert Rules*

■ We now turn to defendant's claim that the face-to-face pretrial identification made by Hoch in the absence of counsel was conducted in violation of his Sixth Amendment right. Defendant cites us to *Wade* and *Gilbert* in support of his contention. These cases, although dealing specifically with post-indictment pretrial lineups, have been interpreted to apply to formal preaccusation lineups as well. (*People* v. *Fowler,* 1 Cal.3d 335, 344 [82 Cal.Rptr. 363, 461 P.2d 643].) However, neither case purported to cover identification confrontation outside the formal lineup context. (See *Russell* v. *United States,* 408 F.2d 1280, 1283.)

In *Fowler,* where a formal lineup identification was involved, the California Supreme Court made it specifically clear that it was not deciding the extent to which the *Wade-Gilbert* rules are applicable to pretrial confrontations occurring outside the context of a formal lineup. (1 Cal.3d at p. 344, fn. 16.) The court did observe, however, "that the *principles* informing rules governing *lineups* are broadly applicable to all pretrial confrontations." (At pp. 342-343, fn. 13.) This analysis appears to find support in *Stovall* where, in discussing the *Wade* principles, the court pointed out any confrontation for the purpose of identification is a "critical stage" in the proceedings requiring the presence of counsel. (*Stovall* v. *Denno, supra,* 388 U.S. 293, 298-299 [18 L.Ed.2d 1199, 1204-1205]; see also *United States* v. *Wade, supra,* 388 U.S. 218, 229 [18 L.Ed.2d 1149, 1158-1159].) In *Stovall* the court had before it a nonlineup confrontation wherein a suspect was shown singly to a murder witness for purposes of identification. The *Wade-Gilbert* rule was held not applicable because it did not apply retroactively. (At p. 296 [18 L.Ed.2d at p. 1203].) The confrontation was held, however, not to be violative of due process on the totality of the circumstances surrounding it. (At p. 302 [18 L.Ed.2d at p. 1206].)

In discussing the matter of confrontation, the California Supreme Court made the following pertinent observation in a footnote of the *Fowler* decision: "[T]he proper determination of whether the *Wade-Gilbert* rules (regarding attachment of the Sixth Amendment right to counsel) rather than the *Stovall* rule (requiring basic due process in all pretrial confrontations) are applicable to a particular case, will be achieved only by a careful balancing of the need for a prompt nonlineup identification in light of the circumstances, against the need for and ability of counsel to help avoid erroneous identification. Each case will of necessity call upon the courts 'to analyze whether potential substantial prejudice to defendant's rights

inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.' (*United States* v. *Wade, supra,* 388 U.S. 218, 227 [18 L.Ed.2d 1149, 1157, 87 S.Ct. 1926].)" (1 Cal.3d at pp. 344-345, fn. 16.)

The foregoing statement was reiterated and applied in the recent case of *People* v. *Martin,* 2 Cal.3d 822, 828-829 [87 Cal.Rptr. 709, 471 P.2d 29]. In that case the victim of a robbery which occurred between 7:30 and 8 p.m. immediately gave a description of the robber to the police. Later that evening the victim was brought to the police station where she viewed two black youths through a one-way mirror.[1] She rejected one and considered the other. Some time later that evening she viewed defendant alone through the one-way mirror. At the trial the victim stated that she positively identified defendant at that viewing. There was testimony, however, that she had then stated that she could not definitely swear that this was the man. The reviewing court held that the viewing was conducted in violation of the principles enunciated in *Wade* and *Gilbert* upon the rationale that the need for identification outside the context of a formal lineup was slight and that nothing was shown which would indicate that a formal lineup with full constitutional protections was rendered impractical by the circumstances. (At p. 829.) "We conclude," said the court, "that the risks of mistaken identification inherent in the proceedings here employed—which risks could have been mitigated by the presence of counsel— far outweigh the need to resort to such a procedure rather than a formal lineup with all constitutional protections, . . ." (At p. 830.)

In view of the foregoing it is clear that the *Wade-Gilbert* rule applies to nonlineup preaccusation identification. Our inquiry, now, in the context of the circumstances of the instant case, is whether the rule applies to identification confrontations with an eyewitness occurring shortly after the commission of the crime or in other circumstances making prompt identification necessary or desirable. In other jurisdictions the *Wade-Gilbert* rule has been held inapplicable to such confrontations upon the rationale that prompt identification may result in the immediate exoneration and release of the suspect, whereas any delay for the purpose of having the suspect viewed in a formal lineup not only may cause the detention of an innocent suspect but it may also diminish the reliability of any identification obtained. (See *Russell* v. *United States,*[2] *supra,* 408 F.2d 1280, 1283-1284; *United States* v. *Davis* (2d Cir. 1968) 399 F.2d 948, 951-952; *State* v. *Boens* (1968) 8 Ariz.App. 110 [443 P.2d 925, 927]; *Commonwealth* v. *Bumpus* (1968)

---

[1]The victim had described the robber as "a young Negro male."

[2]In *Russell* the holding approved only those on-the-scene identifications which occur within minutes of the witnessed crime. (408 F.2d 1280, 1284, fn. 20.)

354 Mass. 494 [238 N.E.2d 343, 346-347]; *State v. Bertha* (1969) 4 N.C.App. 422 [167 S.E.2d 33, 34].)

In California three post-*Wade-Gilbert* cases decided by the Courts of Appeal have come to our attention. Each holds that there is no right to the presence of counsel at timely in-the-field identifications made by a victim minutes after the occurrence of the crime.[3] (*People v. Colgain* (1969) 276 Cal.App.2d 118, 125-128 [80 Cal.Rptr. 659]; *People v. Levine* (1969) 276 Cal.App.2d 206, 208 [80 Cal.Rptr. 731]; *People v. Scoglio* (1969) 3 Cal.App.3d 1, 6 [82 Cal.Rptr. 869];[4] see also *In re Carl T.*, 1 Cal.App.3d 344, 352 [81 Cal.Rptr. 655].) The rationale of these cases is based on the premise that a timely in-the-field identification procedure enhances the reliability of the identification and aids in quickly exonerating the innocent and discovering the guilty. (*People v. Colgain, supra,* at p. 126; see *People v. Irvin, supra,* 264 Cal.App.2d 747, 759-760 [70 Cal.Rptr. 892].) As this court pointed out in *Irvin,* an innocent man should not have to await the assembling of a lineup and the summoning of counsel while the real perpetrator puts more time, and presumably more distance, between him and the focal point of the offense. (At p. 760.)

Upon a conciliation of the cases approving the procedure of prompt in-the-field identification in the absence of counsel with the California Supreme Court decisions of *Fowler* and *Martin,* in the light of the *Wade-Gilbert* rule, we apprehend the rule to be that the presence of counsel is not required at an in-the-field identification made in close proximity to the time and place of the crime itself. On the basis of the public benefit which flows from a timely in-the-field identification enhancing the reliability of the identification, we hold that the need for prompt nonlineup identification in circumstances such as prevailed in the instant case outweighs the need for and the ability of counsel to help avoid erroneous identification. "Such [prompt in-the-field] identifications should be permitted in the absence of counsel without legal impairment to the witness' later in-court identification and testimony concerning such identifications should be admissible, except

---

[3]Other cases have dealt with prompt in-the-field identifications. In these cases the identifications occurred prior to the applicability of the *Wade-Gilbert* rule and they were decided on due process considerations and not with respect to the attachment of Sixth Amendment rights. (See *People v. Irvin,* 264 Cal.App.2d 747, 759-760 [70 Cal. Rptr. 892]; *People v. Burns* (1969) 270 Cal.App.2d 238, 244-246 [75 Cal.Rptr. 688]; *People v. Almengor* (1969) 268 Cal.App.2d 614, 618 [74 Cal.Rptr. 213]; *People v. Romero* (1968) 263 Cal.App.2d 590, 593-594 [69 Cal.Rptr. 748].)

[4]A petition for a hearing by the California Supreme Court was made only in *Scoglio.* The petition was denied on February 18, 1970 following the decision of the Supreme Court in *Fowler* but prior to the decision in *Martin.*

upon a showing in a given case the procedure was conducted so unfairly or in such an impermissibly suggestive manner as to amount to a denial of due process of law." (*People* v. *Colgain, supra,* at p. 127.)

We point out here that even if it be assumed that defendant was entitled to the presence of counsel at the in-the-field identification procedure, the denial of such right did not, however, render the in-court identification inadmissible per se. The admission of an in-court identification which has a source or origin "independent" of the illegal confrontation is not error; it is only where the admission of an in-court identification which is not shown to be "independent" of such a confrontation that the error is of constitutional dimension and compels reversal unless shown to be error harmless beyond a reasonable doubt. (*United States* v. *Wade, supra,* 388 U.S. 218, 239-243 [18 L.Ed.2d 1149, 1164-1167]; *Gilbert* v. *California, supra,* 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186]; *People* v. *Fowler, supra,* 1 Cal.3d 335, 349-350; *People* v. *Martin, supra,* 2 Cal.3d 822, 831.) 1 In the instant case the trial court followed the procedure delineated by *Wade* and *Gilbert* by admitting evidence of the pretrial confrontation in a *voir dire* hearing conducted out of the presence of the jury to determine whether the in-court identification would be tainted by an illegal pretrial identification confrontation. The nature and extent of that hearing and the determination made by the trial court will be discussed below.

## B. *Suggestiveness and Unfairness*

Where it is asserted under the *Stovall* rule that the pretrial identification procedure was so unfair as to taint the in-court identification, the proper procedure requires that the trial court determine initially, outside the presence of the jury, whether such procedure was unfair. (*People* v. *Douglas,* 259 Cal.App.2d 694, 698 [66 Cal.Rptr. 492].) This procedure, since it is invoked on grounds of due process, requires that the defendant demonstrate that the pretrial confrontation "resulted in such unfairness that it infringed his right to due process of law." (*Stovall* v. *Denno, supra,* at p. 299 [18 L.Ed.2d at p. 1205]; *People* v. *Caruso,* 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Burns,* 270 Cal.App.2d 238, 244 [75 Cal. Rptr. 688].) The resolution thereof depends upon a consideration of all the facts and circumstances. (*Stovall* v. *Denno, supra,* at p. 306 [18 L.Ed.2d at p. 1208]; *People* v. *Feggans,* 67 Cal.2d 444, 448-449 [62 Cal.Rptr. 419, 432 P.2d 21]; *People* v. *Burns, supra,* at pp. 244-245.) If there are conflicting factual versions, the conflict must be resolved by the trial judge. (*People* v. *Douglas, supra;* see *People* v. *Neal,* 271 Cal.App.2d 826, 832 [77 Cal. Rptr. 65].)

Where the trial court determines that the pretrial identification

procedure was unfair, it is then incumbent upon the prosecution to establish that the in-court identification will have an origin independent of the pretrial identification, and if such independent origin is established, then the identifying witness is not precluded from identifying the defendant in the courtroom. (*People* v. *Douglas, supra,* 259 Cal.App.2d 694, 698; *People* v. *Stoner,* 65 Cal.2d 595, 601-602 [55 Cal.Rptr. 897, 422 P.2d 585]; *People* v. *Martin, supra,* 2 Cal.3d 822, 831; see *United States* v. *Wade, supra,* 388 U.S. 218, 239-242 [18 L.Ed.2d 1149, 1164-1166]; *Gilbert* v. *California, supra,* 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186].)

■ Contrawise, if the trial court decides that the pretrial identification procedures were fair, the identifying witness may identify the defendant in the courtroom without the necessity of a showing that courtroom identification has an origin independent of the pretrial procedures. (*People* v. *Douglas, supra;* see *People* v. *Neal, supra,* 271 Cal.App.2d 826, 832.) In such case the defendant may still offer before the jury such evidence of unfairness as he can produce. Such evidence affects the weight rather than the admissibility of the identification. (*People* v. *Douglas, supra; People* v. *Neal, supra;* see Evid. Code, § 406.)

■ Adverting to the instant case in the light of these principles, we first observe that the court made no specific determination as to whether the pretrial identification was unfair. The claim of unfairness is that the police unfairly suggested defendant's identity to Hoch when defendant was returned to the store upon his apprehension. Although there is some confusion in Hoch's testimony as to whether he was asked if defendant was the culprit or whether that fact was suggested to him when he was examined by defense counsel,[5] Hoch testified, upon examination by the court, that he had determined that the man in the patrol car was the man who took the television set prior to any statement being made to him by the police.[6] The resolution

---

[5]The record discloses the following testimony: "Q. Did the officer tell you: 'We picked this man up somewhere.' A. Well, they said they got one of the men. Q. You say they got him. What did they mean? What did you take that to mean? A. Well, they picked up the man that picked up the TV. Q. Well, how did they know that? A. Well, I don't know. I don't know how—— Q. Well, did they tell you to do anything with respect to the man who was in the back seat of the patrol car? A. No. Q. Did they ask you was this the man? A. No. Q. They didn't ask you anything at all. Did you get out and purport to make an identification of that man at all? A. Well, I think that I said that that is the man, yes, when we were out in front. Yes. Q. Well, did you say that just out of the clear blue sky? A. They might have suggested: Is this the man? I said: Yes, it is. Q. They might have suggested that that was the man. You might have said: Yes. Is that correct? A. Yeah."

[6]That testimony, in pertinent part, was as follows: "THE COURT: But then you did see the car drive up? THE WITNESS: Yes, I did. THE COURT: And you were watching that car? THE WITNESS: Yes, right. THE COURT: Now you saw who was in it? THE WITNESS: Right. THE COURT: Now had anybody—any police officers spoken to you at that time about who was coming up in the car? THE WITNESS: No. THE COURT: And

of factual conflicts, if any, was for the trial court. Upon the basis of this testimony the trial court apparently concluded that the pretrial identification was fair. We observe, moreover, that even if we were to assume that the trial court might have made an initial determination that the pretrial identification was unfair, its determination to permit the in-court identification was supportable on the basis that the in-court identification of defendant had an origin independent of such pretrial identification, that is, that the identification was based on Hoch's observance of defendant shortly before and at a time when Hoch's mental picture of the thief was fresh in his mind. We point out here that Hoch testified that he had seen defendant's face in the store from a distance of about 25 to 30 feet and he described his age, facial appearance and his wearing apparel, as well, to some detail.

Accordingly, the trial court's determination to permit the in-court identification left the matter in the posture of permitting defendant to introduce such evidence as he could produce at the time of the trial as to the unfairness of the pretrial identification and its effect upon the in-court identification. Such evidence would go to the weight of the identification. The record discloses, however, that no evidence was adduced at the trial going to the unfairness of the pretrial identification procedure.

### C. *Certainty of the Identification*

Adverting to the contention that the pretrial and in-court identifications were equivocal and uncertain, we note that Hoch made a positive identification of defendant as the man who perpetrated the theft both at the time the police returned defendant to the store and in court.

### D. *The Voir Dire Examination*

■ Turning to the claim that the trial court acted improperly in questioning Hoch as to his pretrial identification of defendant, we find it without merit. ■ A judge may examine a witness (*People* v. *Corrigan,* 48 Cal.2d 551, 555 [310 P.2d 953]; *People* v. *Ottey,* 5 Cal.2d 714, 721 [56 P.2d 193]) in order to establish the truth according to the rules of evidence (*People* v. *Corrigan, supra,* at p. 559), or to clarify unclear testimony. (*People* v. *Partin,* 254 Cal.App.2d 89, 94 [62 Cal.Rptr. 59]; *People* v. *Rigney,* 55 Cal.2d 236, 241 [10 Cal.Rptr. 625, 359 P.2d 23, 98 A.L.R.2d 186].) He may not, however, become an advocate for either party. (*People* v. *Rigney, supra; People* v. *Deacon,* 117 Cal.App.2d 206, 209 [255 P.2d

---

when you saw the man come up you were on your own, looking at that man? THE WITNESS: Right. THE COURT: Is that right? And at that time did you satisfy yourself that you had seen the man earlier? THE WITNESS: Yes. THE COURT: And who did you satisfy yourself that that man was? THE WITNESS: This man here (indicating). THE COURT: The man seated in court; is that correct? THE WITNESS: That is correct.

98].) In the present case there is no indication that the trial judge was acting as an advocate for the People; rather it is apparent from the record that, in view of the ambiguous state of Hoch's testimony following the examination by defense counsel, the trial court was merely attempting to clarify Hoch's testimony.

### E. *The Photographic Identification of Defendant's Brother*

 Defendant contends that the photographic identification in court of his brother was prejudicially suggestive as to defendant. Although it is true that in-court identification produced by prejudicially suggestive pre-trial photographic identification can constitute reversible error (*People* v. *Neal, supra,* 271 Cal.App.2d 826, 832; *Simmons* v. *United States,* 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]), that rule envisions only the photographic identification and in-court identification of the defendant himself. Moreover, we perceive no prejudice since we fail to see how defendant could have possibly been misidentified from photographs when his brother, rather than he, was pictured.[7]

### *Prior Offenses*

 Defendant argues that the trial court erred in allowing into evidence testimony of prior like offenses because such admission was unpreceded by adequate determination of their constitutional viability, and because, in any event, the evidence was relatively overly prejudicial. In considering this contention we first observe that the court admonished the jury that the consideration of such priors was to be limited to the issues of identification and to show a common plan or scheme. The same admonition was repeated in the court's instructions.

 The general rule is that evidence of other crimes is inadmissible to prove general criminal propensity. (*People* v. *Haston,* 69 Cal.2d 233, 244 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Beverly,* 233 Cal.App.2d 702, 720 [43 Cal.Rptr. 743]; *People* v. *Crosslin,* 251 Cal.App.2d 968, 978 [60 Cal.Rptr. 309]; *People* v. *Kelley,* 66 Cal.2d 232, 238-239 [57 Cal.Rptr. 363, 424 P.2d 947].) This exclusionary rule is designed to prevent conviction by force of past crimes rather than present evidence. (*People* v. *Haston, supra; People* v. *Kelley, supra; People* v. *Sykes,* 44 Cal.2d 166, 173, 174-

---

[7]We point out here that even where there is *Wade-Gilbert* or *Stovall* error, such error does not require a reversal where the People can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *Gilbert* v. *California, supra,* 388 U.S. 263, 272 [18 L.Ed.2d 1178, 1186]; *Stovall* v. *Denno, supra,* 388 U.S. 293, 300 [18 L.Ed.2d 1199, 1205]; *People* v. *Fowler, supra,* 1 Cal.3d 335, 350.) We are not required to apply this rule in the present case because we have found no constitutional error in the identification process.

175 [280 P.2d 769].) ■■■ However, where such evidence tends, logically, reasonably and naturally to inferentially establish any material elements of the People's case, it is admissible notwithstanding the exclusionary rule. (*People* v. *Haston, supra; People* v. *Beverly, supra,* at p. 721; *People* v. *Kelley, supra; People* v. *Peete,* 28 Cal.2d 306, 316 [169 P.2d 924].) And, to this end, it is established that evidence of other crimes is admissible to show the presence of a common scheme or plan *or* the defendant's identity. (*People* v. *Haston, supra; People* v. *Kelley, supra,* at p. 239; *People* v. *Westek,* 31 Cal.2d 469, 480 [190 P.2d 9].) ■■■ The application of these cases and principles to the present case, in the light of the trial court's admonitions and instructions, indicates to us that there was no error in the admission of the evidence of like prior offenses in view of the similarities in the perpetration of the prior offenses and the instant offense.[8]

We turn then to the question of the constitutional validity of the prior offenses and convictions thereof. Defendant argues that it was error to entertain testimony regarding defendant's prior offenses because it was not properly established that such convictions were constitutionally viable in that it was not proved by the prosecution that such convictions were preceded by an adequate apprisal of defendant's right to counsel and/or a knowing and intelligent waiver thereof. (See *People* v. *Coffey,* 67 Cal.2d 204, 218 [60 Cal.Rptr. 457, 430 P.2d 15]; *In re Woods,* 64 Cal.2d 3, 9-11 [48 Cal.Rptr. 689, 409 P.2d 913]; *People* v. *Espinoza,* 241 Cal. App.2d 718, 719 [50 Cal.Rptr. 879].) This assertion is without merit.

■■■ The cases relied upon by defendant hold only that to the extent that the statutory machinery relating to penal status or the severity of sanction is activated by presence of prior convictions, it is imperative that such convictions be established as constitutionally sound. (*People* v. *Coffey, supra,* 67 Cal.2d 204, 214-215; *In re Woods, supra,* 64 Cal.2d 3, 9-11; *In re Streeter,* 66 Cal.2d 47, 49-50 [56 Cal.Rptr. 824, 423 P.2d 976].) However, before such issue may properly be urged on appeal defendant must below make affirmative allegations evidencing such constitutional error. (*People* v. *Merriam,* 66 Cal.2d 390, 395 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Coffey, supra,* at pp. 218, 219; *People* v. *Espinoza, supra,* 241 Cal.App.2d 718, 720.) Moreover, whether a prior conviction is so constitutionally suspect is a question of law to be resolved by the trial court on the evidence before it. (*People* v. *Espinoza, supra; In re Woods, supra; People* v. *Coffey, supra,* at p. 218; *In re Luce,* 64 Cal.2d 11, 13 [48 Cal. Rptr. 694, 409 P.2d 918].)

---

[8]Specifically, we observe that both priors and the subject offense were committed at approximately the same time of day, in the same general locale, with the same general sequence of executory events, and the taking of the same general type of item.

In the present case the evidence of the prior offenses was admitted for the purpose of establishing defendant's identity and the existence of a common plan or scheme in the perpetration of the offenses and not for the purpose of determining the proper punishment. Moreover, defendant did not make any affirmative allegations in the court below evidencing any alleged constitutional error.

### Misconduct of Prosecutor

Defendant argues that certain misconduct of the prosecutor, singularly or totally considered, constitutes prejudicial misconduct. Defendant first argues that it was misconduct for the prosecutor to emphasize *"one count"* in his opening argument. We fail totally to perceive defendant's point herein. Be that as it may, we need not consider it since such emphasis is not indicated in the record before us and we cannot consider matters outside the record. (*People* v. *Sorrentino,* 146 Cal.App.2d 149, 157 [303 P.2d 859]; *Weller* v. *Chavarria,* 233 Cal.App.2d 234, 246 [43 Cal.Rptr. 364]; *Hom* v. *Clark,* 221 Cal.App.2d 622, 647 [35 Cal.Rptr. 11]; see *People* v. *Shaffer,* 182 Cal.App.2d 39, 45 [5 Cal.Rptr. 844].)

Defendant also asserts misconduct in the prosecutor's reference to defendant as "a felon" in his opening argument. As the People point out, such "label" was not in reference to defendant specifically. Rather, it was made while the prosecutor was defining theft to the jury. Moreover, since we find of record no objection thereto *or* requested admonition from defendant, defendant has waived any objection on appeal. (*People* v. *Asta,* 251 Cal.App.2d 64, 86-87 [59 Cal.Rptr. 206]; *People* v. *Beivelman,* 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913]; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].) We observe here that prosecutorial misconduct objected to and properly admonished does not constitute grounds for reversal except where the case is closely balanced and there is grave doubt as to the defendant's guilt or where the act done or the remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. (*People* v. *Berryman,* 6 Cal.2d 331, 337 [57 P.2d 136]; *People* v. *Lyons, supra; People* v. *Beverly, supra,* 233 Cal.App.2d 702, 724; *People* v. *Swayze,* 220 Cal.App.2d 476, 495 [34 Cal.Rptr. 5].)

Defendant next asserts that the prosecutor misquoted the evidence when he stated in his closing argument that defendant wore a green sweater on the day of the incident, whereas defendant had testified that he was not wearing a sweater but was carrying it. This statement was not dishonest or purposely deceptive but, in the light of the confused record, was, at worst,

an inadvertent mistake.[9] We have held that there exists no prejudicial or reversible conduct where such conduct is inadvertent or an honest mistake. (*People* v. *Graves,* 263 Cal.App.2d 719, 739 [70 Cal.Rptr. 509]; see also *People* v. *Willard,* 150 Cal. 543, 551 [89 P. 124]; *People* v. *Davenport,* 17 Cal.App. 557, 563-564 [120 P. 451].)[10]

■ Error is next asserted on the ground that the prosecutor went outside the record when he stated in his argument that Hoch easily identified defendant at the preliminary hearing as well as at the trial. The record discloses that in making this statement the prosecutor went beyond the evidence adduced. However, no objection was made nor any admonition requested. Defense counsel merely observed that it was not evidence in the case and the jury was instructed that the statements of counsel are not evidence in the case and were to be disregarded if they did not find support in the evidence.

■ Defendant also urges error in the prosecutor's attempt on three occasions to elicit testimony that the name of defendant's brother was observed by the officers on identifying papers found inside defendant's getaway car. In each instance objections were sustained and admonitions were given. We note, moreover, that the mere fact that repeated attempts are made to elicit improper evidence does not per se establish prejudice. (See *People* v. *Wojahn,* 169 Cal.App.2d 135, 148-149 [337 P.2d 192].) We also observe that defendant does not point out how or in what manner this conduct prejudiced him.

■ Finally, defendant contends that the prosecutor's reference to him as "a smart thief and a parasite on the community" constituted prejudicial misconduct. This reference was objected to, the objection was sustained as to the reference "parasite on the community," and an admonishment to the jury to disregard it was given. We observe here that had the objection not been sustained we would regard the epithet as permissible comment by a prosecutor. ■ A prosecutor may vigorously urge his points as long as he does not act unfairly. (*People* v. *Wein,* 50 Cal.2d 383, 396 [326 P.2d 457]; *People* v. *Harris,* 219 Cal. 727, 732-733 [28 P.2d 906]; *People* v. *Hardenbrook,* 48 Cal.2d 345, 353 [309 P.2d 424].) Accordingly, a prosecutor may use appropriate epithets where warranted by the nature of the

[9]The precise issue seems to have been somewhat confused. Defendant's brother testified that defendant was wearing a T-shirt only. Defendant, however, testified that he was wearing a green sweater the day of the incident although only carrying same at the time of his arrest.

[10]The record discloses that defense counsel made an objection but no ruling was made by the court. Defense counsel did not request an admonition.

case and the evidence adduced.[11] (*People* v. *Carr,* 113 Cal.App.2d 783, 788 [248 P.2d 977]; *People* v. *Hunter,* 49 Cal.App.2d 243, 250-251 [121 P.2d 529]; *People* v. *Wein, supra,* at p. 396.)

In sum, we observe that in each instance of properly asserted error defense counsel's objection was sustained and an admonition to disregard was given to the jury. In other instances no objection was made. This is not a close case where there is grave doubt of defendant's guilt in view of the evidence adduced and the positive identification by Hoch. Nor was the effect of the prosecutor's remarks so damaging to defendant as to be incapable of being cured in the instances where the admonition to disregard was given or in the instance where, following the sustaining of an objection, defendant would have been entitled to such an admonition had he requested it.

The judgment and sentence are affirmed.

Sims, J., and Elkington, J., concurred.

---

[11]Examples of such allowability are the sanctioning of such epithets as the defendant "has the sexual appetite of a barbarian or an ape" in a statutory rape prosecution (see *People* v. *Ross,* 178 Cal.App.2d 801, 808 [3 Cal.Rptr. 170]), and "sneaky mother-killer" in prosecution for murder of step-mother. (See *People* v. *Hardenbrook, supra,* 48 Cal.2d 345, 352.)