John L. BATTAGLIA, Appellant,

v.

UNITED STATES of America, Appellee.

No. 21711.

United States Court of Appeals Ninth Circuit.

Feb. 21, 1968.

John L. Battaglia, in pro. per.

William M. Byrne, Jr., U. S. Atty., David R. Nissen, Asst. U. S. Atty., Chief, Special Prosecutions Division, Gerald F. Uelmen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before HAMLEY and ELY, Circuit Judges, and ZIRPOLI, District Judge.

ELY, Circuit Judge:

Appellant Battaglia is a federal prisoner who was convicted on August 19, 1964, for having violated 18 U.S.C. § 1343. He was convicted on six counts of the indictment under which he was charged, and the convictions on two of the counts were affirmed by this court. Battaglia v. United States, 349 F.2d 556 (9th Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 430, 15 L.Ed.2d 360 (1965). Thereafter, on July 15, 1966, Battaglia filed a motion, pursuant to 28 U.S.C. § 2255, to set aside and vacate his conviction. A number of contentions were advanced in the motion, but only two of them require our attention at this time. These two allegations are (1) that in the original criminal proceedings Battaglia was not adequately represented by competent counsel and (2) that he was not mentally competent, during all stages of the criminal proceedings, to understand the nature of the proceedings and to cooperate with his counsel. In support of his motion, Battaglia filed his own affidavit, the affidavits of a pharmacist and of two medical doctors, and the affidavit of Harold A. Abeles, who was Battaglia's attorney throughout all of the original trial, except for the first day thereof. The pharmacist averred that in the months of June, July, and August 1964, during which period the appellant was originally tried, Battaglia presented to him different prescriptions calling for drugs specified as Nembutal, Seconal, Scopalamine, Dexamil, and Darvon. One of the physicians averred that from June 15, 1964, through August 15, 1964, he prescribed for Battaglia "quanities [sic] of Nembutal, Seconal, Darvon, Dextro Amphetamines, etc." The other physician averred that appellant suffers from "Portal Cirrhosis with Hepatic Insufficiency" and that "there are times when Mr. Battaglia has definite impairment of his judgment and memory, and when his thinking becomes confused and his speech slurred. He is subject to periods of somnolence approaching coma." In his own affidavit, Battaglia alleged generally that because of his illness, he consumed large quantities of drugs throughout the course of his trial and was unable fully to communicate with his counsel, although he did communicate the request, rejected by his counsel, that he be permitted to testify in his own behalf. The affidavit of Abeles is set forth in the margin.[1]

1. "HAROLD A. ABELES, being first duly sworn, deposes and says:

"That he is an attorney, duly licensed to practice and practicing law in the

Its principal thrust is that Battaglia appeared to his lawyer to be "a very ill man" during the trial and that because of this "apparent mental and physical condition" the attorney could not permit Battaglia "to testify in his own defense."

The District Court conducted an evidentiary hearing in order to resolve the issues tendered by Battaglia's motion. The proceedings were had before the same district judge who, approximately two years before, had presided over appellant's trial. In attempted support of his motion, Battaglia offered eleven witnesses, including himself, attorney Abeles, and the pharmacist and two physicians who had supplied affidavits in support of the motion. Mr. Abeles testified, as he had represented in his affidavit, that during the trial of the main case his client had been too ill to testify in his own defense. In explanation of his failure to call the problem to the attention of the court, Abeles testified:

"A It was my understanding Mr. Hollopeter had already made a motion for continuance based on this condition before I came into the case.

"Q Did you examine the file?

"A No, I did not."

\* \* \* \* \* \*

"A I may have made a mistake in not making such a motion [for a mistrial], sir. I didn't consider it at the time. It is probably what I should have done."

County of Los Angeles, State of California.

"That I was retained by JOHN BATTAGLIA to represent him in the United States District Court, Southern District of California, Central Division, in case number 32918–Criminal.

"That during the course of the trial, in the aforementioned case, beginning on or about August 12, 1964, I observed that JOHN BATTAGLIA was apparently a very ill man. That he was constantly taking pills. His face was drained of all color and he would quite often assume a greyish-green pallor; that he had difficulty at times holding conversations with me, in that he would become weak, unable to concentrate and unable to stand. At times he appeared to have difficulty in following my conversation and in under-

We need not review in detail the evidence produced at the evidentiary hearing. Suffice it to say that testimony produced by Battaglia was, if believed, sufficient to justify findings that Battaglia was incompetent during his trial and that his trial attorney had not competently represented him because of his failure to call his client's mental and physical condition to the attention of the court.

As we have seen, Battaglia's motion was supported, in part, by the affidavit of attorney Abeles. It could hardly have been expected that Battaglia would proceed with the evidentiary hearing without producing Abeles as a witness. Notwithstanding, the court commenced the hearing with the apparent predetermination that attorney Abeles was unworthy of belief. After hearing the witnesses and during the closing argument by Battaglia's attorney, the court made the following statements: "Well, I want to say here and now, Mr. Kippen, Mr. Abeles' credibility is subject to proof as far as this court is concerned. He had a conversation with me in chambers, and I think this is in the record in the criminal proceedings, and then went before the Court of Appeals and misstated what I had said, so I think this court can consider that in determining the credibility of Mr. Abeles." Also: "Well, I will tell you what you do, Mr. Kippen. If you have a conversation with counsel in chambers and later on he files the matter with

standing all that I was telling him, that he reacted to many of my questions with incoherent answers, and had we been able to communicate so that I could have learned earlier of the matter of his co-defendant TEENER'S testimony, the case would have been tried differently. That because of MR. BATTAGLIA'S apparent mental and physical condition, I could not place him on the witness stand to testify in his own defense. Having entered the case on the second day of trial, I had no opportunity to make any determinations concerning the case proceeding prior to that time, but I can state with certainty that the case would have been handled in a different manner if JOHN BATTAGLIA had been able to communicate with me more coherently in our conversations."

the court of appeals and states deliberately the opposite you know to be the truth, are you going to have any confidence in that attorney?" Finally: "I don't know whether he is telling the truth except by evidence I hear as to this particular testimony. But I just said his credibility is subject to proof in my mind."

▓ Battaglia argues that the court permitted itself to be influenced by the previous event about which there had been no inquiry of Abeles while he was present as a witness with the opportunity to attempt to explain the event which had produced the court's distrust. There is some support for the argument, but during the colloquy from which the foregoing excerpts were taken, the court agreed with a statement by appellant's then counsel to the effect that he did not "think the court has the right to consider something outside of the evidence." Furthermore, the district judge commented: "I will say quite candidly that I don't feel that that experience with Mr. Abeles would prejudice me in any way against this defendant." We think, therefore, that the court's references to its unpleasant experience with the attorney cannot be held to require reversal. After having recalled the incident, the judge stated, in effect, that he would not be prejudiced against Battaglia because of it. On the record before us, we accept the court's representation as an accurate expression of its judicial attitude.

▓ The appellant makes another point, and we are compelled to conclude that it is meritorious. The opinion of the District Court reads, in part, as follows:

"The first question is, was he incompetent during the trial so that he could not assist his counsel?

"The Court must consider in answering this question whether or not it is going to believe petitioner's witnesses. Starting with the petitioner himself, I

just plain don't believe him. Not only did I have the benefit of the trial, *but I had the benefit as part of the presentence report that was supplied to me from the file of the Intelligence Division of the Los Angeles Police Department* * * *."

(Emphasis added.) [2] It thus clearly appears that the court concluded that appellant was not a credible witness and that its conclusion was based, at least in part, upon information which was not a part of the record of the hearing and which was not disclosed to the appellant. It is true, of course, that a judge who conducts the trial of a criminal case and considers a presentence report in awarding punishment is not thereafter disqualified from conducting a hearing pursuant to a motion instituted under the provisions of 28 U.S.C. § 2255. United States v. Smith, 337 F.2d 49 (4th Cir.), cert. denied, 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436 (1965), and cases cited therein. If, however, the judge discovers that he cannot avoid the consideration of material contained in the presentence report, or any other hearsay information not disclosed to a party to the § 2255 hearing, the preservation of the proper image of justice requires that he do one of two things. He should either excuse himself from conducting the hearing, or he should reveal the particular information to the parties so that the person who is possibly to be affected adversely may either object to the court's consideration of the material, if objectionable, or attempt to rebut or counter it. Here, the issue of appellant's credibility was resolved, expressly, by recourse to confidential material which had come to the court's attention in connection with the fixing of penalties. The presentence report, as such, was immaterial to the issues under consideration. If any information contained in the report was material to the issues, the court should either have properly received it into evidence or entirely disregarded it.

Reversed and remanded.

2. Since the only indication of the District Court's consideration of the presentence report appears in the opinion of the court, as indicated above, the appellant obviously had no opportunity to protest.