Charles Joseph **BATTAGLIA**, Jr.,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 23542.

United States Court of Appeals,
Ninth Circuit.

May 8, 1970.

Charles Joseph Battaglia, Jr., in pro. per.

Joseph Corey, Sp. Atty., Dept. of Justice, Washington, D. C., Richard K. Burke, U. S. Atty., Jo Ann D. Diamos, Asst. U. S. Atty., Will Wilson, Asst. Atty. Gen., Tucson, Ariz., for appellee.

Before MADDEN,* Judge of the United States Court of Claims, and KOELSCH and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellant was indicted, tried and convicted, in a non-jury trial, on a charge of violating the Hobbs "Anti-Racketeering" Act, 18 U.S.C. § 1951. After his conviction was affirmed, Battaglia v. United States, 383 F.2d 303 (9th Cir. 1967), and his petition for certiorari denied, 390 U.S. 907, 88 S.Ct. 817, 19 L. Ed.2d 874 (1968), he moved to vacate sentence pursuant to 28 U.S.C. § 2255. Relief was sought on the ground that he was under the influence of drugs at the time of trial, and, consequently, unable to understand the charges against him or to meaningfully cooperate with his attorney. By strange coincidence, the grounds on which appellant relies are essentially the same as those successfully utilized by his brother, John, in Battaglia v. United States, 390 F.2d 256 (9th Cir. 1968). A fair insight into appellant's nefarious activities is provided by the factual statement on appellant's original appeal.

■ Of great significance, on an issue such as here presented, is the fact that the original trial and the 2255 proceedings were before the same judge. Appellant waived his right to a jury trial in the original proceedings. In these circumstances, the trial judge in passing on the petition for relief had the right, and probably the duty, to place important reliance on his own views of appellant's conduct during the course of the trial. Mirra v. United States, 379 F.2d 782, 788 (2d Cir. 1967), cert. denied 389 U.S. 1022, 88 S.Ct. 593, 19 L. Ed.2d 667.

The record before the lower court, and now before us, cannot be completely understood without an analysis of appellant's pretrial maneuvers to avoid ever coming to grips with the charges against him. The original indictment was returned against him and two others in early March, 1965. A short time later, appellant moved for a change of venue or for a continuance, or both. The trial date was originally scheduled for May 4th, but was then set over, at his request, to June 30th. On June 28th, appellant moved for a continuance on the ground of ill health. The trial was rescheduled for September 7th. Later, on his motion, that trial date was vacated and a new date of December 7th was assigned. On December 2nd, he again claimed ill health and asked for a continuance. Once more the trial date was vacated and a new trial date of March 15, 1966, was assigned. Already one year had expired. On March 9th, he again claimed illness and moved for a continuance. The trial date was vacated and May 24th assigned as a new trial date. On May 19th, he again claimed illness and moved for a continuance. Again, the trial date was vacated and a new date assigned for September 22nd. On September 20th, he again moved for a continuance on the same ground. The trial date was once more vacated and a new date of January 10, 1967, was assigned.

Appellant remained adamant in his resistance to trial, and on January 10th, once again moved for a continuance on the grounds of ill health. This motion was denied, but he did obtain a temporary continuance to January 16th, at which time a hearing on a motion to suppress was scheduled. On the next day, the 17th, it was noted that appellant appeared to be in physical difficulty. The court called a recess and ordered a medical evaluation report. The report was filed on January 18th, at

---

* Senior Judge, the United States Court of Claims, sitting by designation.

which time the trial was resumed. On the last motion for continuance, the appellant presented the testimony of his own doctor, who emphasized that it was the emotional stress of going to trial, rather than any physical or mental incapacity, which produced the alleged incapacity. True enough, the doctor did say that appellant was somewhat on the "punchy side", and that "he was under the effects of the narcotics", but he then conceded that appellant would be faced with precisely the same general problems every time he was confronted with trial.

The trial judge found, after a full preliminary hearing, that to continue the case on the January 10th motion would be tantamount to dismissing the indictment. The United States Attorney had reported that in the previous two years the witnesses had scattered, that they had been subpoenaed to appear on four or five previous occasions and on each occasion they were more difficult to find.

After appellant appeared to be under some stress on January 17th, the court, as previously noted, ordered an examination by a doctor appointed at the suggestion of Judge Walsh, the Chief Judge for the District of Arizona. This doctor's original report was marked and filed as part of the record. He interpreted the appellant's electrocardiogram as being within normal limits, as were the blood enzymes. It was this doctor's

conclusion that he "* * * could not establish any objective evidence that any deleterious effect on his (the appellant's) health had occurred from the chest pains reported this morning." The judge's finding toward the end of the proceeding is of even greater significance.[1] That the trial judge had little, if any, confidence in the testimony of defendant's doctor is demonstrated by his statement and finding on the motion for a new trial.[2]

No one is in a better position to look at and analyze the record in light of the charges than is the trial judge who presided over the original proceedings. He had appellant under constant observation, recognizing that the latter had some disability, even to the extent of granting recess after recess for his accommodation. In addition to the observations of the appellant, the judge had the medical records before him.

No one can read the record in this case without arriving at the conclusion that appellant had excellent legal representation throughout the original trial. For that matter, at the close of the trial, the appellant's attorney was highly commended by the trial judge. Nor can anyone with sincerity argue that the appellant was not ably represented by his counsel on the original appeal.

▆ Thus, it clearly appears that the ground for relief presently urged by appellant was considered and decided by

---

1. "One further thing. During the course of these proceedings, defendant has been in attendance and has appeared * that he has at times used oxygen from a container, that he has been in the hospital during the period of time that these proceedings have been held, that he entered the hospital a couple of days prior to the time that these proceedings started. From the testimony of his own physician, and from the report made to the Court by the Court's physician, the Court finds that he is capable of attending the proceedings, and *the Court further finds from his own observation and from his doctor's report that he is capable of assisting in his defense.*" (Emphasis supplied.) (Vol. 5, T.R., p. 254).

    * [Sic].

2. "So, to make the record clear, I hold now again, I do not believe Dr. vonDedenroth. I am just that blunt about it. I do not believe his testimony, and I do believe what Dr. Dexter incorporated in his report. That's my finding. And the reason I don't believe what Dr. vonDedenroth said is because of the way in which he testified, my observation of him while he was a witness, and those are two of the factors, and the other is that I just don't believe his report or his testimony was borne out by the actual facts." (Vol. 7, T.R., p. 6).

the district court in the original trial. Beyond question, this factual resolution was one which appellant could have attacked on his direct appeal. Meador v. United States, 332 F.2d 935 (9th Cir. 1964); Hammond v. United States, 408 F.2d 481 (9th Cir. 1969). He made no such attack. Consequently, the present proceeding, in effect, amounts to nothing more than an attempt to try this matter *de novo*. That this type of proceeding may not be invoked to relitigate questions which were, or should have been, raised on direct appeal was decided in United States v. Marchese, 341 F.2d 782, 789 (9th Cir. 1965), cert. denied 382 U.S. 817, 86 S.Ct. 41, 15 L.Ed.2d 64. The same rule is applied where there is no appeal. Grimes v. United States, 396 F.2d 331 (9th Cir. 1968).

 While a specific intent is necessary to constitute a waiver, that intent can be shown by circumstantial evidence. Rarely, can intent be shown in any other manner. The trial judge's conclusion that appellant waived this issue when he did not present it in the original appeal is amply supported by the record.

For example, on the motion for judgment of acquittal, notwithstanding the verdict, or, in the alternative, for a new trial, appellant and his attorney had an excellent opportunity to urge the point, if they thought it was meritorious. For reasons not disclosed by the record, appellant and his attorney deliberately chose not to press the issue. We quote appellant's counsel: *"As far as the competency of the defendant to stand trial, I won't pursue that at this time; I don't think it's appropriate here now."* In other words, at that very moment, appellant's counsel was saving this point for appeal.

In our opinion, the judge was acting within the confines of judicial propriety in this proceeding when he disregarded the affidavit of one Dr. Ross. The document was made some years after the trial and, at best, is a psychiatrist's guess on appellant's mental condition at the time of trial. The record is completely devoid of anything which even remotely suggests that appellant was so under the influence of narcotics that he was unable to assist his counsel during the course of the appeal.

The judge's finding, "that the records and files in this case show that his claim for relief is not well founded in fact", is just another way of saying that the records and files conclusively demonstrated that appellant was entitled to no relief.

On the record here presented, the trilogy of guideline decisions, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), supports our conclusions that appellant is not entitled to relief. The trial judge's findings and order, with which we are in general though not necessarily specific agreement, are reported in 311 F.Supp. 1126.

Affirmed.