Filed 12/20/13  In re Devin H. CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re DEVIN H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEVIN H.,<br><br>    Defendant and Appellant. | A137854<br><br>(Contra Costa County<br>Super. Ct. No. J1201281) |

Appellant minor Devin H. was originally declared a ward of the court under Welfare and Institutions Code section 602 at age 13 in Napa County on January 21, 2009, for threatening a teacher and using obscenity at school.  (Pen. Code, §§ 71, 415.5, subd. (a).)  He has had numerous sustained petitions for delinquent behavior amounting to a probation violation since then.  (§ 777.)[1]  A second section 602 petition was sustained in Contra Costa County on September 7, 2012, based on Devin's plea of no contest to receiving stolen property (Pen. Code, § 496, subd. (a)) and resisting arrest (Pen. Code, § 148, subd. (a)).   After several more probation violations, on January 23, 2013, he was sent to the Youthful Offender Treatment Program (YOTP), a locked facility in Contra Costa County Juvenile Hall.  The sole issue on appeal is whether the maximum term of

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

confinement was properly calculated at 53 months, or whether instead it should have been set at 49 months. We conclude there was an error in the calculation and modify the dispositional order accordingly.

## BACKGROUND

Devin H. has been involved in the juvenile justice system since shortly before his 14th birthday. His first section 602 petition in Napa County stemmed from threatening a fellow student and making offensive sexual suggestions, shouting profanities at the principal, breaking school rules by riding his skateboard in the school bus area, and threatening to hit a female teacher.

He was declared a ward and released to the custody of his mother, but he thereafter demonstrated persistent problems adjusting to school rules, eventually being suspended from a middle school and two high schools. He used profanities toward a teacher and violated the dress code within days after being placed on probation. In May 2009, he made threatening remarks with gang overtones to other students and was suspended from middle school. In February 2010 he was suspended from high school three times for possession of marijuana, harassing another student, and defiance of school rules, including using profanity and racial slurs in class. He violated probation again on August 19, 2011, by being involved in a campus disruption, with a resulting suspension.

On June 24, 2012, at age 17, Devin was detained in San Francisco for skateboarding on a crowded street during the Gay Pride Parade. He shouted profanities at the officer who detained him and refused to identify himself or his parents.

On August 30, 2012, Devin was arrested in Hercules with two other minors near a residence that had just been burglarized. Devin had the victim's credit card in his pocket but claimed he had found it on the ground.

A section 602 petition was filed in Contra Costa County on September 4, 2012, alleging first degree residential burglary, a felony (Pen. Code, §§ 459, 460), receiving stolen property as a felony (Pen. Code, § 496, subd. (a)), resisting arrest during the June 24 incident (Pen. Code, § 148, subd. (a)(1)), and giving false information to a peace officer in June (Pen. Code, § 148.9, subd. (a)).

2

On September 7, 2012, Devin pled no contest to receiving stolen property and resisting arrest, and the other allegations were dismissed. On September 17, Contra Costa County accepted Napa County's transfer in request. Devin was sent to Orin Allen Youth Rehabilitation Facility (OAYRF) for six months on September 21, 2012, where he continued having difficulty making a satisfactory adjustment. Between his initial placement at OAYRF on September 24, 2012, and November 30, 2012, Devin accumulated over 30 special incident reports, 15 behavioral progress reports, and over 307 negative write ups. His misbehavior resulted in the court adding 130 days to his OAYRF commitment.

Between October 4 and December 5, 2012, Devin admitted four section 777 petitions alleging probation violations mostly relating to failure to adjust to the program and failure to follow the rules, including throwing salt in another ward's face, fighting, inciting the group, and engaging in disruptive, disrespectful and threatening behavior.

On December 21, 2012, a fifth section 777 petition was filed based on allegations that Devin had failed to adjust to the program in that, among other things, he cheated in school, talked back to a teacher, verbally abused staff, disrupted class, pushed another ward, was in a near fight, and used profanity. On January 2, 2013, Devin admitted the fifth probation violation.

As a result of his probation violations, Devin was committed to YOTP on January 23, 2013. At disposition the court indicated the maximum term of confinement was 53 months, or until Devin turned 21, whichever occurred first. This is the order from which he appeals.

**DISCUSSION**

On September 7, 2012, when Devin entered his no contest pleas to receiving stolen property and resisting arrest, he was informed that his maximum term of confinement was three years, four months. This calculation took account of the allegations to which he pled no contest in the 2012 petition alone. The maximum term of confinement was first calculated at 53 months in the probation report prepared in connection with the disposition of Devin's section 602 petition in September 2012 and

again in the disposition report prepared for the probation violation disposition on January 23, 2013. The probation reports do not explain the basis for that calculation. Yet, on December 5, 2012, after Devin admitted his fourth probation violation, the district attorney indicated the maximum term of confinement was four years, one month, or 49 months, and the court so advised Devin. Then, once again, in its disposition order of January 23, 2013, the court adopted the calculation of 53 months contained in the probation report without explaining how the maximum term was computed.[2]

Devin now claims the 53-month maximum term of confinement was miscalculated, and the district attorney was correct in computing the maximum term as 49 months. Although the defense attorney did not object to the 53-month calculation on the record, Devin points out that an unauthorized sentence may be corrected at any time. (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

The juvenile court may aggregate multiple counts and previously sustained section 602 petitions in calculating the maximum term of confinement.[3] "When

---

[2] To the extent Devin argues that the 53-month maximum term of confinement represented an additional increment based on the probation violation, the record strongly suggests otherwise. We agree with the Attorney General that the 53-month calculation originated with the September 2012 probation report and was simply carried forward to the January 2013 calculations without careful scrutiny by either the probation officer or the juvenile court.

[3] Section 726, subdivision (d), provides as follows: "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court.

"As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled.

"If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor

aggregating multiple counts and previously sustained petitions, the maximum confinement term is calculated by adding the upper term for the principal offense, plus one-third of the middle term for each of the remaining subordinate felonies . . . ." (*In re David H.* (2003) 106 Cal.App.4th 1131, 1133-1134.) When aggregating a subordinate term for a misdemeanor under section 726, a juvenile court should add one-third of the maximum term for the misdemeanor. (*Id.* at p. 1134, fn. 2; *In re Eric J.* (1979) 25 Cal.3d 522, 536-538.)

We deal with only two section 602 petitions: one in January 2009 and the second in September 2012. Devin claims the correct calculation, if the court elected to aggregate all four sustained counts in the two petitions,[4] would be as follows: the upper term of three years (36 months) for receiving stolen property would be included in the calculation, since that offense is subject to a 16-month/two year/three year sentencing triad under Pen. Code section 1170, subdivision (h)(1) (Pen. Code, § 496). Eight months would be added for threatening a teacher in the 2009 section 602 petition as one-third of the middle term for this felony. (Pen. Code, §§ 71, subd. (a)(1), 1170, subd. (h)(1).) Misdemeanor resisting arrest during the June 24, 2012 incident would add four months to the calculation (one-third the maximum term of one year). (Pen. Code, § 148, subd. (a)(1).) Thirty days would be added for misdemeanor disrupting school by using profanity in the 2009 petition (one-third the maximum term of 90 days), for a total of 49 months. (Pen. Code, § 415.5,subd. (a).) The Attorney General does not dispute this

a ward within Section 602, the 'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code, which includes any additional term imposed pursuant to Section 667, 667.5, 667.6, or 12022.1 of the Penal Code, and Section 11370.2 of the Health and Safety Code.

"If the charged offense is a misdemeanor or a felony not included within the scope of Section 1170 of the Penal Code, the 'maximum term of imprisonment' is the longest term of imprisonment prescribed by law."

[4] Devin notes that aggregation is not mandatory, but discretionary with the juvenile court. (*In re Adrian R.* (2000) 85 Cal.App.4th 448, 454; *In re Richard W.* (1979) 91 Cal.App.3d 960, 982.) Although the court did not expressly state it was aggregating the petitions and offenses, that exercise of discretion was implicit in its disposition.

5

calculation, nor can she explain how the court arrived at a 53-month maximum. Neither can we. The calculation proposed by Devin appears to be correct.

Instead of proposing an alternative calculation, the Attorney General relies on the presumption of duty regularly performed. (Evid. Code, § 664.) She claims we must presume the juvenile court computed the term in accordance with the law, even though by computing the term ourselves we come up with a different answer. We decline to carry the presumption of regularity so far. We cannot presume the court correctly calculated the maximum term of confinement when a calculation that appears to be incorrect has been brought to our attention and the Attorney General has been unable to explain how it was computed.

The Attorney General cites *In re Julian R.* (2009) 47 Cal.4th 487, 498, and *People v. Coddington* (2000) 23 Cal.4th 529, 644, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046 (*Coddington*). We find those cases distinguishable and unhelpful.

*In re Julian R.* dealt with a minor who claimed that, because the record was silent, the juvenile court must have *failed* to consider the "facts and circumstances" of his crimes which could have resulted in setting a lower maximum term of confinement. (*In re Julian R.,* 47 Cal.4th at p. 498.) The court, of course, cited the presumption of duty regularly performed, rather than speculating about possible error not appearing on the face of the record. In that case the minor sought to premise error on a silent record. (*Ibid.*) Here the record affirmatively reflects the error. (Cf. *In re C.W.* (2012) 208 Cal.App.4th 654, 660-661.)

*Coddington* discussed the presumption of duty regularly performed where a judge reviewed the probation report before ruling on an automatic motion for reduction of the death penalty under Penal Code section 190.4. (23 Cal.4th at pp. 643-644.) The judge was supposed to consider only evidence that came before the jury in ruling on that motion. (*Id.* at pp. 644-645.) "Absent evidence to the contrary," the Supreme Court said, the presumption of judicial duty properly performed could be relied upon to support the conclusion that the trial court correctly distinguished between information in the

6

probation report that could properly be considered and that which was extraneous to the motion. (*Id.* at pp. 644-645.) However, because the trial court did mention matters from the probation report that were not before the jury, the Supreme Court went on to "examine the record 'to determine whether the court may have been improperly influenced by material in the report.' " (*Id.* at p. 645.) Thus, the court did not rely solely on the presumption of regularity. Although it noted it could employ such a presumption due to trial judges' ability to separate admissible from inadmissible evidence and their presumed knowledge of the law, because there was some "evidence to the contrary" (*id.* at pp. 644-645), the court went on for several pages discussing the court's actual remarks (*id.* at pp. 645-650) before concluding that no error occurred.

But here the state has had an opportunity to explain the court's calculation and has been unable to do so. We think the difference in calculation was clearly an error on the court's part, apparently due to reliance on a faulty calculation by the probation department. The error appears to have resulted from a miscalculation rather than a judicial officer's misapplication of the law, more in the nature of ministerial error than judicial error. The judge's intention to impose a maximum term of confinement based on aggregated petitions and offenses is clear from the record. Once that exercise of discretion took place, the mathematical calculation of the maximum term of confinement may properly be regarded as ministerial in nature and subject to correction on appeal. (See *People v. Jack* (1989) 213 Cal.App.4th 913, 917.)

In an analogous situation, when presentence credits have been calculated incorrectly, we have not hesitated to correct the calculation and order the abstract amended accordingly. (*People v. Williams* (1992) 10 Cal.App.4th 827, 835, see also, e.g., *People v. Jack*, *supra*, 213 Cal.App.4th at p. 917.) We have the inherent power to correct clerical errors in the record at any time to make the record reflect the true facts. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *Greenwich S.F. v. Wong* (2010) 190 Cal.App.4th 739, 750, fn. 8 .) We consider a mathematical miscalculation of the maximum term of confinement to fall within the realm of clerical or ministerial error subject to correction on appeal.

7

In fact, it seems to us the parties do not really disagree about the correct calculation, but simply quarrel about whether the calculation should be corrected at all. The Attorney General suggests that, because the miscalculation originally occurred in a September 2012 probation report, we must not "reach back in time" to correct an error from an earlier disposition. But Devin points out that the miscalculation in the September 2012 probation report was not reflected in the September 21, 2012 order. That order did not include a calculation of the maximum term of confinement. On the other hand, the error clearly appears in the disposition order of January 23, 2013, and we do not believe we would violate any rule of finality by correcting it in the current appeal.

The Attorney General further notes the maximum term imposed was the earlier of 53 months or when Devin turns 21. He will turn 21 in February 2016, long before either 49 months or 53 months expire. Therefore, the Attorney General implies, it really does not matter which calculation is used. When a minor is not prejudiced by the presence of a term in the dispositional order, there is authority for the proposition that there is no need for reversal or remand. (*In re Ali A.* (2006) 139 Cal.App.4th 569, 573-574 [maximum term of confinement specified where minor not removed from parents' custody; no appellate action taken]; but see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 541 [same, but maximum term of confinement stricken].) But we think the minor is entitled to an accurate dispositional order.

The Attorney General, still clinging to the presumption of regularity, further suggests that if we find the calculation of 53 months was in error we should remand the matter to allow the court to explain and document its method of calculating the maximum term. At the same time she argues it would be a waste of judicial resources to remand the matter for further judicial action, and with that much we agree.

We find the matter much simpler to resolve than to avoid. Judicial action is unnecessary on remand. We will remand only for clerical compliance with our order that the dispositional order should be modified to reflect a maximum term of confinement of 49 months.

## DISPOSITION

The cause is remanded to the superior court, where the dispositional order shall be amended to reflect a maximum term of confinement of 49 months, or until age 21 years, whichever occurs first.  A copy of the amended dispositional order shall be forwarded to Contra Costa County Juvenile Hall, YOTP.  In all other respects the judgment is affirmed.

_____
Richman, J.

We concur:

_____
Haerle, Acting P.J.

_____
Brick, J.[*]

_____

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.