Filed 11/14/22  In re B.L. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re B.L., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B318044 (Super. Ct. No. NJ30284) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>B.L.,<br><br>    Defendant and Appellant. | |

B.L. appeals from the judgment entered after the juvenile court sustained a petition filed pursuant to Welfare and Institutions Code section 602.  The court found true an allegation that he had committed attempted second degree robbery.  (Pen. Code, §§ 664, 211, 212.5, subd. (c).)  It placed him on probation in his mother's home.

Appellant contends the evidence is insufficient to show that the victim accurately identified him as the perpetrator of the attempted robbery. We affirm.

*Trial Testimony*

Maria R. (Maria) and her friend, J.H., were at the Pike Mall in Long Beach. It was approximately 9:30 p.m. They had been riding on an electric scooter that stopped working. J.H. stayed on the scooter. Maria "got off" the scooter and "sat down." She was holding her wallet and cell phone. She was looking at the phone when two men approached her. They tried to pull away her wallet and cell phone.

Maria did not let go of her property. She fell to the ground and hit her chin and knee. Maria "kept on screaming, . . . 'Stop. Please stop.' And they didn't until [J.H.] turned around and heard me scream."

J.H. saw Maria and the two men "struggling with her" on the ground. He ran toward Maria. The men kicked and punched J.H. They "took the scooter" and fled. Nothing was taken from Maria.

Maria telephoned 911. About five minutes later, the police arrived. Maria told the police that one of the perpetrators "was wearing a gray sweater and gray light-colored pants."

The police told Maria that "they had somebody" and she should "go ahead and clarify if that was the person." The police drove Maria to a location where three suspects had been detained. Maria identified two of the suspects.

Appellant was one of the suspects identified by Maria. At the time of the identification, he was standing. After identifying him, Maria wrote the following statement on a police form: "'That's him. That's the way he approached me. And that's how

2

he was wearing his pants.'" At trial she again identified appellant.

The prosecutor asked Maria, "Why did you identify [appellant at the field show-up]?" She replied, "His clothing." Maria testified that she was "[a] hundred percent" certain of her identification. When asked why she was so certain, Maria responded: "Because when he was pulling my items from my hand, . . . I was looking at him very well. What he was wearing that day." She also said she had "made eye contact" with appellant.

Appellant is black. Maria appears to be Hispanic. She has a Hispanic name and her friend, J.H., needed the assistance of a Spanish interpreter when he testified.

*Videos*

Two videos were admitted into evidence. One is a surveillance video of the attempted robbery. It was taken from a distance and is of poor quality. The video shows Maria seated on the edge of a planter. It is nighttime, but the area is well lit. Maria is looking down at something. Two men are standing to her right. One man is wearing a gray sweatshirt and hoodie. A backpack is strapped onto his back. The other man is wearing a dark-colored sweatshirt and hoodie. The man in the gray sweatshirt approaches Maria and bends over directly in front of her. The front of his face appears to be about one to two feet away from the front of Maria's face. A struggle ensues between Maria and the man in the gray sweatshirt. The man in the dark-colored sweatshirt joins the struggle. Maria is knocked to the ground. J.H. runs toward Maria. The two men walk away. A fight breaks out between J.H. and the man in the dark-colored sweatshirt. Maria gets up off the ground. She and J.H. confront

3

the two men at a distance of approximately 12 feet. The video ends.

The other video shows the interaction between Maria and the police. A police officer reads Maria the following admonition: "We are detaining a person for you to view who may or may not be the person who committed the crime now being investigated. The fact that this person is detained, and may or may not be handcuffed, should not influence you. It is just as important to free innocent persons from suspicion as it is to identify guilty persons. . . . [¶] After you have enough time to look at this person tell me or another officer whether or not you can identify this person."

Maria enters a police vehicle. An officer drives the vehicle approximately one block, turns right at the corner, and comes to a stop. While seated inside the vehicle, Maria identifies a suspect who is not visible in the video. Maria says, "That's him." She recognizes the suspect "[by] the way he's standing." The officer asks, "And you said you knew because of the way he's standing[?]" Maria replies, "Yeah, that's the way he came up and approached me. And that's the way he was wearing his, um, pants . . . and yeah, his hoodie." "Yeah, and his pants were sagging." The police vehicle then drives Maria back to the crime scene.

*Standard of Review*

"The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases . . . ." (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) "[T]he sufficiency of an . . . identification to support a conviction should be determined under the substantial evidence test . . . used to determine the sufficiency of other forms of evidence to support a

4

conviction." (*People v. Cuevas* (1995) 12 Cal.4th 252, 257.) "The court must 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.)

"'[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) The trial court here stated, "I did find the victim in this case . . . credible."

*Appellant's Argument*

Appellant argues: "[Maria] identified [appellant] not because of any physical attribute or even because he was a black male. She identified him by the way he was standing and because of the way he wore his non-distinctive clothing." "While she might have been able to get 'a very good look at his face[,]' she did not identify appellant based on his face." "[T]he cross-racial nature of the victim's identification further calls into doubt the accuracy of the victim's identification of appellant, as '[r]esearch shows that persons of one racial or ethnic group may have more difficulty distinguishing among individual faces of another group than among faces of their own group. . . .'" "The fact [Maria] was able to identify appellant in court just proves she remembers identifying him the night of the attempted

5

robbery. It does nothing to buttress her highly suspect field identification." "An identification based on the way appellant was standing and how he wore his non-distinctive clothing does not constitute substantial evidence that he was the would-be-robber that night at the Pike."

*Substantial Evidence Supports the*
*Reliability of Maria's Identification*

"Identification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime." (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) Substantial evidence supports the reliability of Maria's identification of appellant.

Within minutes after the attempted robbery, the police apprehended appellant a short distance from the crime scene. "[T]he law favors field identification measures when in close proximity in time and place to the scene of the crime, with the rationale for the rule being stated: 'The potential unfairness in such suggestiveness . . . is offset by the likelihood that a prompt identification within a short time after the commission of the crime will be more accurate than a belated identification days or weeks later. . . .'" (*In re Richard W.* (1979) 91 Cal.App.3d 960, 970.)

The videos of the attempted robbery and of Maria's ride in the police vehicle show that few persons were in the vicinity of the crime scene. This factor, along with appellant's proximity to the crime scene and the short lapse in time between the commission of the crime and appellant's apprehension, reduced the risk that Maria identified the wrong person.

Although Maria said she had "made eye contact" with the perpetrator, she did not need to see his face to make a reliable

6

identification. "'[I]t is not necessary that any of the witnesses called to identify the accused should have seen his face. [Citation.] Identification based on other peculiarities may be reasonably sure. Consequently, the identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features or clothing.'" (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 522 (*Mohamed*).) Maria said her identification of appellant was based primarily on his clothing and the distinctive way he was standing and was wearing his pants and hoodie. Like the perpetrator, appellant's pants "were sagging."

Moreover, Maria did not hesitate in identifying appellant at the field show-up. She immediately said, "That's him." She testified that she was "a hundred percent" certain of the accuracy of her identification.

We recognize that "[t]here is near unanimity in the empirical research that "'under most circumstances, witness confidence or certainty is not a good indicator of identification accuracy.'"" (*People v. Lemcke* (2021) 11 Cal.5th 644, 665.) But "that 'does not mean that eyewitness certainty is never correlated with accuracy.'" (*Id*. at pp. 666-667.) "The large body of research conducted in this area has identified numerous factors that can affect the correlation between witness certainty and accuracy including (among other things): (1) whether the confidence statement occurred before or after the identification; (2) the temporal proximity between the event and the identification; (3) whether the witness provided an expression of certainty at the initial identification; (4) whether the witness was highly confident; (5) the use of suggestive identification procedures; and (6) information witnesses receive after the identification that

7

might increase their level of confidence." (*Id*. at p. 667.) Here, there was close "temporal proximity between the event and the identification," Maria "provided an expression of certainty at the initial identification," and she was "highly confident." (*Ibid*.)

As to the cross-racial nature of Maria's identification, an appellate court observed: "Errors in cross-racial identifications are two to two and a half times higher than same race identifications. Moreover, the errors in cross-racial identifications are almost exclusively false positives, e.g., saying a person is the perpetrator when the person is not the perpetrator." (*Mohamed*, *supra*, 201 Cal.App.4th at p. 520.) But the cross-racial nature of Maria's identification had minimal impact on the accuracy of her identification because it was based primarily on factors other than appellant's face.

It has been said that, "'[a]propos the question of identity, to entitle a reviewing court to set aside a jury's [or a court's] finding of guilt the evidence of identity must be so weak as to constitute practically no evidence at all.'" (*Mohamed*, *supra*, 201 Cal.App.4th at p. 521.) Here, the totality of the circumstances shows that ample evidence supports the reliability of Maria's identification of appellant.[1]

---

[1] At the conclusion of the hearing, appellant made remarks that could be construed as an implied admission that he had participated in the attempted robbery. In summarizing the evidence, the court said, "As [Maria] was raising her head, she saw the minor in this case – or she saw a person approach her and try to grab her cell phone from her hand as well as try to grab her wallet from her hand." Appellant blurted out: "Can't even see." "I had a whole mask on." In determining whether substantial evidence supports the reliability of Maria's identification, we have not considered appellant's remarks.

*Disposition*

The judgment is affirmed. <u>NOT TO BE PUBLISHED</u>.


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

9

Terry Truong, Commissioner

Superior Court County of Los Angeles

_____

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Dana M. Ali, Supervising Deputy Attorney General, Stacy S. Schwartz, Deputy Attorney General, for Plaintiff and Respondent.